UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES E. WALKER, <br><br> Plaintiff, <br><br> v. <br><br> SHERWIN MILES, et al., <br><br> Defendants. | No. 23 CV 128 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff James Walker is an inmate at Sheridan Correctional Center. Walker brings suit against eight employees of the Illinois Department of Corrections challenging four practices at Sheridan that he argues violated his Eighth Amendment rights by needlessly jeopardizing his health. At issue here is Walker's claim against defendant Sherwin Miles—former warden at Sheridan—arising out of the prison's policy requiring sick prisoners to wait outside in freezing weather for prolonged periods to receive medication. Warden Miles moves for summary judgment on this claim. For the reasons discussed below, Miles's motion for summary judgment is granted.

I.  **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the plaintiff "cannot present sufficient evidence to create a genuine dispute of material fact regarding any essential element of her legal claims on which she bears the burden of proof," a defendant is entitled to summary judgment. *Burton v. Bd. of Regents*, 851 F.3d 690, 694 (7th Cir. 2017). I view all the facts and draw reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023).

**II.    Facts**

James Walker has been incarcerated at Sheridan Correctional Center in Sheridan, Illinois, since 2021. [129] ¶ 1.[1] Walker has experienced chronic sinusitis since 2007. [129] ¶ 2. Walker's sinusitis causes severe headaches, periods of constant coughing, and intense congestion—symptoms that can last for weeks. [129] ¶ 2. He also has arthritis and back pain. [129] ¶ 3. When an inmate at Sheridan is prescribed a medication that they are not allowed to keep on their person, they are given a "call pass" to report to the healthcare facility. [130] ¶ 18; [129] ¶ 7. To receive their medication, inmates must wait in line outside the building. [129] ¶ 4. This practice protects the privacy of inmates' medical information. [130] ¶ 11. The "Medline" is supervised by correctional officers and at times lasts for up to 30 minutes. [129] ¶¶ 3–

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Walker's response to Miles's Local Rule 56.1 statement of facts, [130], where both the asserted fact and the opposing party's response are set forth in one document. The facts are also drawn from Walker's statement of additional facts, [129]. Miles did not respond to these additional facts, and all material facts set forth in a nonmovant's additional statement are deemed admitted unless controverted by the moving party. N.D. Ill. Local R. 56.1(a).

4. Walker has waited in this line in both the freezing cold and sweltering heat. [129] ¶ 7. Standing in line in the cold significantly worsens Walker's sinusitis and hurts his back. [129] ¶¶ 9, 12.[2] As a result, Walker has sought additional care at the prison to treat his aggravated symptoms. [129] ¶ 11.

Sherwin Miles was the warden at Sheridan from June 2020 until October 2022, and then again briefly until she retired in April 2023. [130] ¶ 4. As warden, Miles oversaw the assistant warden of operations (responsible for the day-to-day operations of the facility) and the assistant warden of programs (responsible for clinical services, healthcare, and education). [130] ¶ 5. Miles did not handle the contract between Sheridan and Wexford Health Services, which provides health services to inmates. [130] ¶ 10.

Miles personally witnessed individuals waiting to receive medication and saw the line outside. [129] ¶ 20. In October 2021, Walker filed a grievance regarding the Medline. [129] ¶ 21. Grievances contain a signature line for the "Chief Administrative Officer" (or warden). [131-1]. Miles authorized designees to sign grievances on her

---

[2] Walker may not be competent to testify to these facts as a lay witness, irrespective of Miles's failure to contest them. *See* Fed. R. Evid. 701. Though worsening headaches, congestion, and back pain may be injuries rationally based on the witness's perception, pain may be a more "complicated question of medical causation." *See Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). No medical professional told Walker that his allergies or colds worsened from standing outside. [130] ¶ 20. Nevertheless, "[e]xpert testimony is not always necessary to establish causation in a case where an inmate alleged that prison employees violated his due process rights by failing to provide him with adequate medical care." *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). Because establishing causation is unnecessary to resolve the present motion for summary judgment, I admit Walker's testimony about the aggravation of his symptoms.

3

behalf. [130] ¶ 9. Walker's grievance was denied at all three levels of review and bears Miles's handwritten name. [129] ¶ 21.

Walker filed his original complaint in January 2023. In April 2023, I recruited counsel to represent Walker. [22]. In July 2023, Walker filed his first amended complaint—and then his second amended complaint—naming additional defendants. Ultimately, Walker brought suit against Miles and seven other individuals employed by the Illinois Department of Corrections, Wexford, and five individuals employed by Wexford. [42]. Wexford and its employees moved for summary judgment, and Walker voluntarily dismissed them from the case in February 2025. [100]. Unlike the Wexford defendants, the Department of Corrections defendants did not initially file any dispositive motions.

Walker's claims arise under the Eighth Amendment and fall under four categories. The first category—unacceptable conditions of medical care and unresponsiveness—is the Medline practice described above. After the Wexford defendants were dismissed from the case, this claim appeared moot. However, upon clarification from plaintiff, I concluded that the complaint was sufficient to put Miles on notice that the Medline claim was also against her. I then granted her leave to move for summary judgment on this specific claim. [114].

Walker also alleges three other categories of unconstitutional treatment: (1) prolonged unsanitary and cramped conditions in his cell; (2) spoiled and cold food; and (3) unconsented COVID testing. [42] at 5–7. Walker argues that Miles's present motion challenging the Medline practice cannot be addressed in isolation from these

4

other three claims. [128] at 6. Though deficiencies in prison conditions can exist in combination, *see Rhodes v. Chapman*, 452 U.S. 337, 362–63 (1981), as discussed below, liability under § 1983 requires personal involvement. If Walker cannot establish that Miles was personally involved in a challenged practice, then that specific challenge cannot survive against her.

### III. Analysis

Section 1983 confers a private right of action against government officials who—acting under color of state law—deprive a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes*, 452 U.S. at 347). To prevail on a claim based on deficient medical care, an inmate must demonstrate (1) an objectively serious medical condition, and (2) an official's deliberate indifference to that condition. *Luckett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019). Deliberate indifference to conditions that pose a substantial risk of serious harm violates the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

#### A. Objective Requirement: Serious Medical Condition/Substantial Risk of Serious Harm

A medical condition that has been diagnosed by a physician as mandating treatment is objectively serious. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Chronic or degenerative conditions that may escalate fit this definition. *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). As I explained earlier in this litigation,

5

Walker's allegations that he suffers from chronic sinusitis and takes medication for the condition are sufficient to allege a serious medical condition. *See Walker v. Dale et al.*, 23-cv-131, [4] at 4. Since Miles did not dispute Walker's claim of unbearable back pain, [129] ¶ 12, I accept for purposes of summary judgment that his pain is a serious medical condition.

Miles argues that Walker has failed to produce evidence supporting the alleged nexus between the wait time outside and his aggravated symptoms. [124] at 5. It is true that most cases challenging the adequacy of medical treatment include some form of expert testimony. But drawing inferences in Walker's favor, and accepting his assertion that his headaches and back pain worsened (unbearably) from standing in line, for purposes of summary judgment his testimony could support a finding that he suffered from objectively serious medical conditions and waiting in line posed a substantial risk of serious harm to him.

**B. Subjective Requirement: Deliberate Indifference**

But Walker must also establish that there is some dispute of material fact over whether Miles herself was deliberately indifferent.

A prison official violates the Eighth Amendment when she is deliberately indifferent to an inmate's serious medical condition. *Ollison v. Gossett*, 136 F.4th 729, 735 (7th Cir. 2025). There are "two distinct categories of deliberate indifference claims" regarding medical treatment: claims of isolated instances of indifference to a specific inmate's medical needs and claims of systemic deficiencies rendering a

6

facility's medical treatment constitutionally inadequate for all inmates. *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430–31 (7th Cir. 1989).

To hold an individual defendant liable under the first category, the inmate must show that the defendant was personally responsible for any violation. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). Personal responsibility is the touchstone of this category because the doctrine of respondeat superior does not apply to § 1983 actions. *Ollison*, 136 F.4th at 735. Thus, "the supervisory official must have known of, facilitated, approved, condoned, or turned a blind eye to his subordinates' activity, although he need not have directly participated." *Id.* at 736.

Walker does not present evidence that Miles directed the Medline practice. *See, e.g., Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). To the contrary, the undisputed evidence is that the officer running the medication window decided how cellhouses line up, and Miles did not control how the line was formed. [131-1] at 2. Therefore, Miles lacks the personal involvement necessary to be found liable under the first category of deliberate indifference claims.

To hold an individual defendant liable under the second category, the inmate must show that "systemic deficiencies in staffing, facilities or procedures make unnecessary suffering inevitable." *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983). He must also prove that the warden knew of and disregarded a substantial risk of harm to him. *Id.* Walker argues that the Medline practice falls under this second category of deliberate indifference. [128] at 7.

7

### 1. *Actual Knowledge*

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways." *Farmer*, 511 U.S. at 842. Here, there is no dispute over whether Miles had actual knowledge over the Medline practice; she testified that she had "personally witnessed" prisoners waiting to receive medication, including waiting in line outside. [123-2] at 89:3–5; [123-2] at 66:1–2. Further, general awareness of the practice is sufficient to establish the requisite knowledge: Miles need not have known that the Medline practice would create risks particularly damaging to Walker. *See Farmer*, 511 U.S. at 843.

### 2. *Conscious Disregard*

But just because Miles *knew* that a line existed does not automatically support a finding that she consciously disregarded the substantial risk that it created. Mere negligence is not enough. *Petties*, 836 F.3d at 728. Walker has provided no evidence to support a finding that Miles knew (or should have known) that the Medline was aggravating his sinusitis symptoms or back pain. Walker cannot prove that Miles read or was made aware of his grievance. Miles is not a doctor. Knowing that the Medline stretched outside is meaningfully different from consciously disregarding the substantial risk of harm that Walker alleges it created. Both Walker and Miles testified to personal experience that involved exposure to the elements while waiting for medical care. Walker said he walked two miles to get to a hospital before he was incarcerated, and Miles waited outside of pharmacies. [130] ¶¶ 15–16. On this record,

8

there is no reasonable inference that merely knowing about a line outside evinces a conscious disregard for risk.

Further, claims under § 1983 are predicated on individual liability—*respondeat superior* does not apply. *Id.* My inquiry is limited to Miles's role in the Medline practice and does not concern the role of her inferior officers, unless she specifically directed them to engage in the conduct amounting to a constitutional violation. The day-to-day operations of Sheridan and its health care facility were handled by assistant wardens, not Warden Miles. [130] ¶ 5. Walker's argument that Miles could have cured the Medline's defect is speculative at best. There is no evidence that Miles knew Walker personally and Walker himself did not initially believe the Medline claim applied to her. [130] ¶ 25. Walker's argument essentially boils down to faulting Miles because she was the boss—an approach expressly prohibited by § 1983. [130] ¶ 31; *Gayton*, 593 F.3d at 622.

Walker's argument that no "non-imprisoned sick persons" would tolerate waiting outside for 30 minutes is similarly unpersuasive. [128] at 11. Aside from being unsupported by authority, this argument also overlooks the fact that the test for deliberate indifference centers around the defendant's behaviors (and not what a reasonable plaintiff would or would not endure). In the absence of admissible evidence that Miles caused or participated in a constitutional deprivation, Walker's Medline claim against Miles cannot survive.

## IV. Conclusion

Defendant's motion for summary judgment, [122], is granted. The three other practices challenged by the second amended complaint remain pending for trial.

ENTER:

                                                                Manish S. Shah
                                                                United States District Judge

Date: January 8, 2026